IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| RESPONSE GENETICS, INC.,[1] | ) | Case No. 15-11663 (___) |
| | ) | |
| Debtor. | ) | |

**DEBTOR'S MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS UNDER SECTION 366 OF THE BANKRUPTCY CODE (A) PROHIBITING UTILITY PROVIDERS FROM ALTERING, REFUSING OR DISCONTINUING SERVICE, (B) DEEMING UTILITY PROVIDERS ADEQUATELY ASSURED OF FUTURE PERFORMANCE, (C) ESTABLISHING PROCEDURES FOR DETERMINING ADEQUATE ASSURANCE OF PAYMENT AND (D) GRANTING RELATED RELIEF**

Response Genetics, Inc., the above-captioned debtor and debtor in possession (the "Debtor"), hereby files this Motion for entry of an interim order (the "Interim Order") and a final order (the "Final Order"), substantially in the forms attached hereto as **Exhibit B** and **Exhibit C**, respectively, under 11 U.S.C. §§ 105(a) and 366(a) (a) prohibiting the Utility Providers (defined below) from altering, refusing or discontinuing service; (b) deeming the Utility Providers adequately assured of future performance; (c) establishing procedures for determining additional adequate assurance of future payment; and (d) granting related relief (the "Motion"). In support of this Motion, the Debtor respectfully states as follows:

**Jurisdiction and Venue**

1. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of*

---

[1] The last four digits of the Debtor's tax identification number are: (5548). The location of the Debtor's headquarters and service address is 1640 Marengo St., 7th Floor, Los Angeles, CA 90033.

*Delaware*, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtor confirms its consent pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief requested herein are sections 105(a), 363, 366, 1107 and 1108 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (as amended, the "Bankruptcy Code") and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules") and Local Rule 9013-1(m).

## Background

4. On the date hereof (the "Petition Date"), the Debtor filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor is operating its business and managing its properties as a debtor and debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5. No request has been made for the appointment of a trustee or an examiner in this case, and no official committee has yet been appointed by the Office of the United States Trustee.

6. The factual background regarding the Debtor, including its current and historical business operations and the events precipitating the chapter 11 filing, is set forth in detail in the *Declaration of Thomas A. Bologna in Support of First Day Motions* (the "First Day Declaration") filed concurrently herewith and fully incorporated herein by reference.[2]

**Relief Requested**

7. In connection with the operation of its business and management of its property, the Debtor has relationships with various utility companies and other providers (each a "Utility Provider" and, collectively, the "Utility Providers") for the provision of telephone, gas, electricity, water, waste disposal and related services (the "Utility Services"). The Utility Providers include, without limitation, the entities set forth on the list (the "Utility Services List") attached hereto as **Exhibit A**.[3] The relief requested herein is requested with respect to all Utility Providers providing Utility Services to the Debtor.

8. Uninterrupted Utility Services are essential to the Debtor's ongoing business operations. The Debtor's operations require electricity for lighting, gas for heating, water, waste management and disposal, and telephone and internet services. Should any Utility Provider refuse or discontinue service, even for a brief period, the Debtor's business operations could be severely disrupted, and such disruption would jeopardize the Debtor's ability to operate

---

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the First Day Declaration.

[3] The listing of any entity on Exhibit A hereto is not an admission that any listed entity is a utility within the meaning of section 366 of the Bankruptcy Code. The Debtor reserves the right to assert at any time that any entity listed on Exhibit A is not entitled to adequate assurance pursuant to Bankruptcy Code section 366. The Debtor further reserves the right to terminate the services of any Utility Provider at any time and to seek an immediate refund of any Adequate Assurance Deposit (as defined below) without giving effect to any right of setoff or claim asserted by a Utility Provider against the Debtor.

its business. Accordingly, it is essential that the Utility Services continue uninterrupted during the case.

9. The Debtor, by this Motion and pursuant to sections 105(a) and 366 of the Bankruptcy Code, seeks the entry of interim and final orders: (a) prohibiting the Utility Providers from altering, refusing or discontinuing services; (b) deeming Utility Providers adequately assured of future performance; (c) establishing procedures for determining adequate assurance of future payment; and (d) granting related relief. In addition, the Debtor requests that the Court schedule a final hearing within approximately twenty-five (25) days of the commencement of this chapter 11 case to consider approval of this Motion on a final basis.

10. The Debtor intends to pay postpetition obligations owed to the Utility Providers in a timely manner. Cash held by the Debtor, cash generated in the ordinary course of business, and cash available to the Debtor through its debtor in possession financing facility, will provide sufficient liquidity to pay the Debtor's Utility Service obligations in accordance with prepetition practice.

11. In order to provide adequate assurance of payment for future services to the Utility Providers, the Debtor proposes to make a deposit (the "Adequate Assurance Deposit") equal to fifty percent (50%) of the Debtor's estimated cost of its monthly utility consumption to each Utility Provider which the Debtor intends to continue to utilize during the course of this case and which may be adjusted by the Debtor to account for the termination of utility services by the Debtor or other arrangements with respect to adequate assurance of payment reached with a Utility Provider.

4

12. The Debtor estimates that its average monthly payments to the Utility Providers aggregate approximately $12,000. Accordingly, the Debtor estimates that the Adequate Assurance Deposits, in the aggregate, will total approximately $6,000. This amount, which is equal to approximately two weeks of the Debtor's estimated average postpetition monthly aggregate cost of utility services, will be held in a newly created and segregated account (the "Deposit Account").

13. The allocation of the Adequate Assurance Deposit amongst the Debtor's respective Utility Providers is set forth on **Exhibit A** hereto. The Adequate Assurance Deposit will be held in the segregated account for the duration of this chapter 11 case. The Debtor submits that the Adequate Assurance Deposit, in conjunction with the Debtor's ability to pay for future utility services in accordance with prepetition practice (collectively, the "Proposed Adequate Assurance"), constitutes sufficient adequate assurance to the Utility Providers in full satisfaction of section 366 of the Bankruptcy Code.

14. In addition, the Debtor seeks to establish reasonable procedures (the "Adequate Assurance Procedures") by which a Utility Provider may request additional adequate assurance of future payment, in the event that such Utility Provider believes that its Adequate Assurance Deposit does not provide it with satisfactory adequate assurance. Such Adequate Assurance Procedures, in particular, would provide that:

    a. If a Utility Provider is not satisfied with the assurance of future payment provided by the Debtor pursuant to the proposed Adequate Assurance Deposit, the Utility Provider must serve a written request (the "Adequate Assurance Request") upon the Debtor setting forth the location(s) for which Utility Services are provided, the account number(s) for such location(s), the

5

     outstanding balance for each account, a summary of the Debtor's average utility usage over the past twelve months, and an explanation of why the Adequate Assurance Deposit is inadequate assurance of payment;

  b. The Adequate Assurance Request must be actually received by the Debtor, 1640 Marengo St., 7th Floor, Los Angeles, CA 90033, Attn: Kevin Harris, and Debtor's counsel, James E. O'Neill, Esq., Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, P.O. Box 8705, Wilmington, Delaware 19899-8705 (Courier 19801) _____, 2015 (the objection deadline set by the Court regarding final hearing on the Motion);

  c. The Debtor is authorized to resolve, in its sole discretion, any Adequate Assurance Request by mutual agreement with a Utility Provider and without further order of the Court and, in connection with any such agreement, in its sole discretion, provide a Utility Provider with alternative adequate assurance of payment, including cash deposits, payments of prepetition balances, prepayments, or other forms of security, without further order of the Court, if the Debtor believes such alternative assurance is reasonable.

  d. If the Debtor is unable to consensually resolve an Adequate Assurance Request by mutual agreement within 14 days of receipt of the Adequate Assurance Request, the Debtor will seek a hearing with the Court (the "<u>Determination Hearing</u>") to determine the appropriate amount of adequate assurance required with respect to such Adequate Assurance Request. Pending resolution of such Adequate Assurance Request at the Determination Hearing, the Utility Provider shall be prohibited from altering, refusing, or discontinuing services to the Debtor on account of unpaid charges for prepetition services or on account of any objections to the Proposed Adequate Assurance.

  e. The Utility Providers are prohibited from requiring additional adequate assurance of payment other than pursuant to the Adequate Assurance Procedures.

  f. All Utility Providers who do not file an objection or serve an Adequate Assurance Request shall be: (a) deemed to have received adequate assurance of payment "satisfactory" to such Utility Provider in compliance with section 366 of the Bankruptcy Code; and (b) forbidden to discontinue, alter, or refuse services to, or discriminate against, the Debtor on account of any unpaid prepetition charges, or require additional assurance of payment other than the Proposed Adequate Assurance.

  g. The Debtor may, in its sole discretion, add or remove any Utility Provider from the Utility Services List, and the Debtor shall add to or subtract from the Adequate Assurance Deposit an amount equal to one half of the Debtor's average monthly cost for each subsequently-added or removed Utility Provider as soon as practicable. For Utility Providers that are added to the Utility

6

Services List, the Debtor will cause a copy of the order granting this Motion, including the Adequate Assurance Procedures, to be served on such subsequently added Utility Provider. Any Utility Provider subsequently added to the Utility Services List shall be bound by the Adequate Assurance Procedures.

15. If the Debtor supplements the list in **Exhibit A** hereto subsequent to the filing of this Motion, the Debtor will serve a copy of this Motion and the signed order granting the Motion (the "Order") on any Utility Provider that is added to the list by such a supplement (the "Supplemental Service"). In addition, the Debtor will also provide an Adequate Assurance Deposit equal to fifty percent (50%) of the estimated cost of monthly utility consumption for the added Utility Provider. Concurrently with the Supplemental Service, the Debtor will file with the Court a supplement to **Exhibit A** adding the name of the Utility Provider so served. The added Utility Provider shall have thirty (30) days from the date of service of this Motion and the Order to make a Request.

16. Finally, the Order provides that the Debtor may terminate the services of any Utility Provider by providing written notice (a "Termination Notice"). Upon receipt of a Termination Notice by a Utility Provider, pursuant to the relief requested by the Debtor herein, the Utility Provider shall immediately refund any Adequate Assurance Deposit to the Debtor, without giving effect to any rights of setoff or any claims the Utility Provider may assert against the Debtor. The Debtor believes that the immediate refund of an Adequate Assurance Deposit by a Utility Provider whose services are terminated is fair and appropriate under the circumstances because the Utility Provider would no longer require adequate assurance of future performance by the Debtor.

## Basis for Relief

17. Congress enacted section 366 of the Bankruptcy Code to protect a debtor from utility service cutoffs upon a bankruptcy filing while, at the same time, to provide utility companies with adequate assurance that the debtor will pay for postpetition services. *See* H.R. Rep No. 95-595, at 350 (1978) *reprinted in* 1978 U.S.C.C.A.N. 5963, 6306. Accordingly, section 366 protects a debtor by enjoining utilities from altering, refusing or discontinuing services solely on account of unpaid prepetition amounts for a period of thirty (30) days after the bankruptcy filing. And it protects utilities by permitting them to alter, refuse or discontinue service after thirty (30) days if the Debtor has not furnished "adequate assurance" of payment.

18. Section 366(c), which was enacted as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (the "2005 Act"), significantly modified the existing statutory framework. It has two primary purposes. First, it permits a utility to alter, refuse or discontinue utility service if Debtor has not provided "satisfactory" adequate assurance within thirty (30) days of their bankruptcy filings, subject to the court's ability to modify the amount of adequate assurance. Second, it also restricts the factors that a court can consider when determining whether an adequate assurance payment is, in fact, adequate. Specifically, courts may no longer consider (i) the absence of a security deposit before the debtor's petition date, (ii) the debtor's history of timely payments, or (iii) the availability of an administrative expense priority when determining the amount of a deposit. Notwithstanding these changes, as discussed below, it does not appear that Congress intended to -- or did -- abrogate the bankruptcy court's

8

right to determine the amount of adequate assurance necessary or change the fundamental requirement that assurance of payment must simply be "adequate."

19. First, while section 366(c) does limit the factors a court can consider when determining whether debtors have provided adequate assurance of payment, it does not limit the court's ability to determine the amount of payment necessary, if any, to provide such adequate assurance. Instead, section 366(c) gives courts the same discretion in determining the amount of payment necessary for adequate assurance as they previously had under section 366(b). *Compare* 11 U.S.C.§ 366(b) (2005) ("On request of a party in interest and after notice and a hearing, the court may order reasonable modification of the amount of the deposit or other security necessary to provide adequate assurance") *with* 11 U.S.C. § 366(c)(3)(A) (2005) ("On request of a party in interest and after notice and a hearing, the court may order modification of the amount of an assurance payment under paragraph (2)"); *see also* Richard Levin & Alesia Ranney-Marinelli, *The Creeping Repeal of Chapter 11: The Significant Business Provisions of the Bankruptcy Abuse Protection and Consumer Protection Act of 2005*, 79 Am. Bankr. L.J. 603, 608-09 (2005) (stating that courts would likely continue to determine the amount and form of adequate protection after the implementation of the 2005 Act). And it is well established that section 366(b) permits a court to find that no adequate assurance payment at all is necessary to provide a utility with adequate assurance of payment. *See In re Caldor*, 117 F.3d 646, 650 (2d Cir. 1997) ("Even assuming that 'other security' should be interpreted narrowly,... a bankruptcy court's authority to 'modify' the level of the 'deposit or other security' provided for under § 366(b) includes the power to require 'no deposit or other security' where none is necessary to

9

provide a utility supplier with 'adequate assurance of payment'"). This may be particularly true in cases where the debtor has made prepetition deposits or prepayments for services that utilities will ultimately render postpetition. 11 U.S.C. § 366(c)(1)(A)(v) (recognizing a prepayment for postpetition services as adequate assurance). Accordingly, courts continue to have discretion to determine the amount and form of adequate assurance payments.

20. Additionally, section 366(c), like section 366(b), simply requires that a utility's assurance of payment be "adequate." Courts have long recognized that adequate assurance of performance does not constitute an absolute guarantee of a debtor's ability to pay. *In re Caldor, Inc.*, 199 B.R. 1, 3 (S.D.N.Y. 1996) (Section 366(b) "does not require an 'absolute guarantee of payment'"); *In re Adelphia Bus. Solutions, Inc.*, 280 B.R. 63, 80 (Bankr. S.D.N.Y. 2002) (accord); *In re Steinbach*, 303 B.R. 634, 641 (Bankr. D. Ariz. 2004) ("Adequate assurance of payment is not, however, absolute assurance... all § 366(b) requires is that a utility receive only such assurance of payment as is necessary to protect its interests given the facts of the debtor's financial circumstances"). Courts have also recognized that in determining the amount of adequate assurance, bankruptcy courts should focus "on the need of the utility for assurance, and to require that the debtor supplies *no more than that*, since the debtor almost perforce has a conflicting need to conserve scarce financial resources." *In re Caldor, Inc.*, 117 F.3d at 650.

21. The essence of the Court's inquiry in determining whether a given assurance of payment is in fact "adequate" is an examination of the totality of the circumstances in making an informed judgment as to whether utilities will be subject to an unreasonable risk of nonpayment. *Id.* at 82-83. *See also In re Magnesium Corp. of Am.*, 278 B.R. 698, 714 (Bankr.

10

DOCS_LA:290328.1 73845-001

S.D.N.Y. 2002) ("In deciding what constitutes adequate assurance in a given case, a bankruptcy court must focus upon the need of the utility for assurance, and to require that the debtor supply no more that than that, since the debtor almost perforce has a conflicting need to conserve scarce financial resources.")

22. Here, the Debtor proposes to make Adequate Assurance Deposits in order to provide adequate assurance to their Utility Providers. Under the circumstances of this case, the Debtor believes that the proposed Adequate Assurance Deposits constitute adequate assurance of payment under section 366(c) of the Bankruptcy Code. Moreover, the Debtor proposes to protect the Utility Providers further by establishing the Adequate Assurance Procedures provided for herein, whereby any Utility Provider can request additional adequate assurance in the event that it believes there are facts and circumstances with respect to its providing postpetition services to the Debtor that would merit greater protection.

23. The Debtor cannot continue to operate without continued Utility Services. If any of the Utility Providers alter, refuse or discontinue service, even for a brief period, the Debtor's business operations would be severely disrupted. In contrast, the Utility Providers will not be prejudiced by the continuation of their services and will be paid all postpetition utility charges. It is therefore critical that Utility Services continue uninterrupted.

24. Additionally, this Court has the authority to grant the relief requested herein pursuant to section 105(a) of the Bankruptcy Code which provides that the Court "may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). The purpose of section 105(a) is "to assure the bankruptcy

11

DOCS_LA:290328.1 73845-001

courts [sic] power to take whatever action is appropriate or necessary in aid of the exercise of their jurisdiction." 2 COLLIER ON BANKRUPTCY ¶ 105.01, at 105-5 to 105-6 (15th rev. ed. 2001). Because the proposed Adequate Assurance Procedures protect the Debtor without materially prejudicing the Utility Providers, they carry out section 366 in a manner fully consistent therewith and are an appropriate exercise of this Court's authority under section 105(a) of the Bankruptcy Code.

25. The Debtor respectfully submits that their proposed method of furnishing adequate assurance of payment for postpetition utility service is not prejudicial to the rights of any Utility Provider and is in the best interest of the Debtor's estate. Courts have approved similar procedures in other Chapter 11 cases filed after the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. *See, e.g., In re Cache, Inc.* Case No. 15-10172 (MFW) (Bankr. D. Del. Feb. 23, 2015) (approving adequate assurance deposit equal to one half of debtor's monthly utility expenses); *In re Deb Stores Holding, LLC,* Case No. 14-12676 (KG) (Bankr. D. Del Dec. 5, 2014( (same); *In re Sorenson Commc'ns, Inc.*, No. 14-10454 (BLS) (same); (Bankr. D. Del. Mar. 26, 2014); *In re Dolan Co.*, Case No. 14-10614 (BLS) (Bankr. D. Del. Mar. 25, 2014) (same); *In re FAH Liquidating Corp. f/k/a Fisker Auto. Holdings, Inc.*, Case No. 13-13087 (KG) (Bankr. D. Del. Dec. 16, 2013) (same); *In re Physiotherapy Holdings, Inc.*, Case No. 13-12965 (KG) (Bankr. D. Del. Dec. 6, 2013) (same); *In re Longview Power, LLC,* Case No. 13-12211 (BLS) (Bankr. D. Del. Sept. 25, 2013) (same).

DOCS_LA:290328.1 73845-001

### Satisfaction Of Bankruptcy Rule 6003 And Waiver Of Bankruptcy Rule 6004

26. Pursuant to Rule 6003(b) of the Federal Rules of Bankruptcy Procedure, "a motion to pay all or part of a claim that arose before the filing of the petition" shall not be granted by the Court within 20 days of the Petition Date "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm . . . ." Fed. R. Bankr. P. 6003(b). Because the Utilities may attempt to terminate the Debtor's postpetition utility services within the period set forth in section 366(c)(2) of the Bankruptcy Code, and for the reasons set forth in the First Day Declaration, the Debtor submits that the requirements of Rule 6003 have been met and that the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtor and its estate.

27. To implement the foregoing successfully, the Debtor seeks a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the ten-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h), to the extent these rules are applicable.

### Reservation of Rights

28. Nothing contained herein is intended or should be construed as an admission as to the validity of any claim against the Debtor, a waiver of the Debtor's rights to dispute any claim, or an approval or assumption of any agreement, contract, or lease under section 365 of the Bankruptcy Code. The Debtor expressly reserves its right to contest any claim related to the relief sought herein. Likewise, if the Court grants the relief sought herein, any payment made pursuant to an order of the Court is not intended to be nor should it be construed

DOCS_LA:290328.1 73845-001

as an admission as to the validity of any claim or a waiver of the Debtor's rights to subsequently dispute such claim

### Notice

29. The Debtor will provide notice of this Motion to the following parties, or their counsel, if known: (a) the Office of the United States Trustee; (b) the Debtor's twenty (20) largest unsecured creditors; (c) the Debtor's prepetition and postpetition lenders; and (d) any party that has requested notice pursuant to Bankruptcy Rule 2002. As the Motion is seeking "first day" relief, within two business days of the hearing on the Motion, the Debtor will serve copies of the Motion and any order entered respecting the Motion as required by Local Rule 9013-1(m). The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given.

### No Prior Request

30. No prior motion for the relief requested herein has been made to this or any other Court.

WHEREFORE, the Debtor respectfully requests that this Court enter an interim and final order, substantially in the forms attached hereto as **Exhibit B and Exhibit C**, granting the relief requested herein and such other and further relief as this Court deems appropriate.

Dated: August 9, 2015

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ James E. O'Neill*

Jeffrey N. Pomerantz (CA Bar No. 143717)
Ira D. Kharasch (CA Bar No. 109084)
James E. O'Neill (DE Bar No. 4042)
John W. Lucas (CA Bar No. 271038)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705
Telephone: 302/652-4100
Facsimile: 302/652-4400
E-mail: jpomerantz@pszjlaw.com
ikharasch@pszjlaw.com
joneill@pszjlaw.com
jlucas@pszjlaw.com

Proposed Counsel for the Debtor and Debtor in Possession