IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| RESPONSE GENETICS, INC., [1] | ) | Case No. 15-11663 (LSS) |
| | ) | |
| Debtor. | ) | |

## MOTION FOR THE APPROVAL OF KEY EMPLOYEE INCENTIVE PLAN AND AUTHORIZING PAYMENTS THEREUNDER

Response Genetics, Inc., the above-captioned debtor and debtor in possession (the "Debtor"), hereby submits this motion (this "Motion") for the entry of an order authorizing and approving the implementation of that certain *Response Genetics, Inc. Key Employee Incentive Plan* dated August 7, 2015 (the "KEIP") attached hereto as Exhibit A. In support of the Motion, the Debtor respectfully states as follows:

### PRELIMINARY STATEMENT

1.     By this Motion, the Debtor seeks approval of the KEIP that incentivizes certain key employees (collectively, the "Eligible Employees") to close a sale of substantially all of the Debtor's assets (the "Sale") conducted in accordance with the terms of the Debtor's postpetition credit facility for the benefit of this estate and creditors. The KEIP provides the Eligible Employees with meaningful, but reasonable, monetary incentives that are payable upon consummation of the Sale.

2.     Concurrently herewith, the Debtor is filing the (a) *Debtor's Motion for Order: (A) Approving Bid Procedures for the Sale of Substantially All of the Debtor's Assets*

---

[1]     The last four digits of the Debtor's tax identification number are 5548. The location of the Debtor's headquarters and service address is 1640 Marengo Street, 7th Floor, Los Angeles, CA 90033.

*Outside the Ordinary Course of Business; (B) Scheduling an Auction and Hearing to Consider the Sale and Approve the Form and Manner of Notice Related Thereto; (C) Approving Payment of a Break-Up Fee; and (D) Granting Related Relief* (the "Bid Procedures Motion") and (b) *Debtor's Motion for Order (A) Approving Asset Purchase Agreement and Authorizing the Sale of Substantially All of the Debtor's Assets; (B) Authorizing the Sale of Assets Free and Clear of All Liens, Claims, Rights, Encumbrances and Other Interests Pursuant to Bankruptcy Code Sections 105, 363(b), 363(f) And 363(m); (C) Assuming and Assigning Certain Executory Contracts and Unexpired Leases; and (D) Granting Related Relief* (the "Sale Motion").

3.    To finance the sale process, the Debtor has obtained postpetition financing from SWK Funding LLC (the "DIP Agent"), as agent for the lenders and other financial institutions (the "DIP Lenders"). Such postpetition financing has been approved on an interim basis in the *Order (1) Authorizing the Debtor to Obtain Post-Petition Financing on an Interim Basis, Granting Senior Postpetition Security Interests and According Superpriority Administrative Expense Status Pursuant to Sections 364(c) and 364(d) of the Bankruptcy Code, (2) Authorizing the Use of Cash Collateral, (3) Granting Adequate Protection, (4) Modifying the Automatic Stay, and (5) Granting Related Relief* [Docket No. 26] (the "Interim DIP Order"). The Debtor is authorized to make such KEIP related payments subject to the terms set forth in the documents governing the Debtor's postpetition credit facility obtained from the DIP Agent and DIP Lenders (including the approved budgets relating thereto).

4.    As described more fully in the Sale Motion, the Debtor has executed an *Asset Purchase Agreement* dated August 14, 2015 (the "Agreement"), between the Debtor, as seller, and Cancer Genetics, Inc. (the "Purchaser"), as buyer, for the sale of substantially all of the assets of the Debtor, subject to higher and better offers.

2

5.      The Sale requires a substantial commitment of time and effort on the part of the Eligible Employees.  In order to maximize the value to be generated by the Sale, the Debtor must market its assets, generate interest on the part of potential purchasers, support extensive due diligence requests from interested parties, receive qualified bids, conduct an auction, obtain court approval for the Sale, and then close upon the Sale.  In the meantime, the Debtor must maintain operations and going concern value that is critical to maximizing the value of this estate.  The work and effort of the Eligible Employees is absolutely critical to the success of this process.

6.      In order to incentivize the Eligible Employees to maximize value with respect to the Sale, the Debtor seeks authority to implement the KEIP described in detail below. Under the exigent circumstances here, the Debtor requires the focused and committed services of the Eligible Employees to close the Sale.  Under the terms of the KEIP, the Eligible Employees will be paid an incentive payment only if the Sale is consummated.  Accordingly, the Debtor has determined in the exercise of its sound business judgment that it is in the best interests of its estate to institute the KEIP for the Eligible Employees.

## JURISDICTION

7.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  The Court may enter a final order consistent with Article III of the United States Constitution.

8.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3

9.    The statutory predicates for the relief sought herein are sections 105(a), 363(b), 503(b)(1), and 503(c)(3) of Title 11 of the United States Code (the "Bankruptcy Code").

## BACKGROUND

10.    On August 9, 2015 (the "Petition Date"), the Debtor filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtor is operating its business and managing its properties as a debtor and debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request has been made for the appointment of a trustee or an examiner in this chapter 11 case.  No official committee has been appointed by the Office of the United States Trustee.

11.    The factual background relating to the Debtor's commencement of this chapter 11 case is set forth in detail in the *Declaration of Thomas A. Bologna in Support of First Day Motions* filed on the Petition Date and incorporated herein by reference.

## THE PROPOSED KEIP

12.    In order to incentivize the Eligible Employees whose work is critical to supporting due diligence efforts, concluding the auction, closing the Sale and maintaining going concern value, the Debtor seeks to implement the KEIP.

13.    The Debtor believes that the best efforts of the Eligible Employees are necessary to successfully close the Sale and that the best way to help motivate the Eligible Employees is by instituting the KEIP.

14.    Eligible Employees.    The KEIP covers two tiers of employees:   (1) seventeen current rank and file non-insider employees of the Debtor (the "Non-Insider Eligible Employees"), and (2) two existing officers of the Debtor, Thomas A. Bologna (Chief Executive Officer) and Kevin Harris (Chief Financial Officer) (together, the "Insider Eligible Employees").

4

The Debtor believes that the Eligible Employees are absolutely critical to the Sale process and their best efforts are required to maximize the value of the Assets.  The Non-Insider Eligible Employees include key division vice presidents, technicians, supervisors, and sales representatives of the Debtor.

      15.    *Non-Insider* Eligible Employees.  With reference to the Non-Insider Eligible Employees, upon closing of the Sale, the Non-Insider Eligible Employees shall share in an aggregate payment in an amount of up to $318,886.39 (the "Non-Insider Bonus Pool").  Each Non-Insider Eligible Employee shall receive a portion of the Non-Insider Bonus Pool, subject to the terms of the KEIP.  To the extent that a Non-Insider Eligible Employee is not eligible to receive his or her share from the Non-Insider Bonus Pool, unless otherwise agreed to by the DIP Agent, the Non-Insider Bonus Pool shall be reduced by an amount equal to the amount allocated to such Non-Insider Eligible Employee.

      16.    *Insider* Eligible Employees.  With reference to the Insider Eligible Employees, upon closing of the Sale, the Insider Eligible Employees shall share in an aggregate payment in an amount of up to $289,698.00 (the "Insider Bonus Pool"); *provided, however,* that the Insider Bonus Pool shall be increased by 20% of every dollar by which the actual recovery received by the DIP Lenders from the Sale purchaser in respect of the asset purchase agreement (or other applicable purchase agreement) governing the Sale exceeds $10,540,585.00.  The Insider Eligible Employees shall receive a portion of the Insider Bonus Pool, as set forth on Appendix B annexed to the KEIP.  To the extent that an Insider Eligible Employee is not eligible to receive his share from the Insider Bonus Pool, unless otherwise agreed to by the DIP Agent, the Insider Bonus Pool shall be reduced by an amount allocated to such Insider Eligible Employee.

5

17.     The Eligible Employees must be employed by the Debtor through the closing of the Sale in order to be eligible to receive the incentive payments earned as described above.  The incentive payments will be paid on the closing date of the Sale.  However, if an Eligible Employee's employment with the Company is terminated without cause, or due to death or disability, prior to the closing date of the Sale, then such Eligible Employee shall be entitled to receive any payments that would have become due under the KEIP had the Eligible Employee been employed through such closing date.[2]  For the avoidance of doubt, each Eligible Employee is entitled to payment out of the respective bonus pool even if such Eligible Employee is rehired by the Purchaser.

18.     In addition to the foregoing terms and conditions, the payments under the KEIP will be in lieu of any other performance bonus, retention, or severance compensation otherwise payable to the Eligible Employees by the Debtor.  Payment of any KEIP amounts is further subject to any and all terms, conditions, and limitations regarding such payments set forth in the Interim DIP Order, the DIP Credit Facility Documents (as such term is defined in the Interim DIP Order), and the other documents governing the Debtor's postpetition financing obtained from the DIP Agent and DIP Lenders.

## RELIEF REQUESTED

19.     By this Motion, the Debtor requests that the Court enter an order, pursuant to sections 105(a), 363(b), 503(b)(1), and 503(c) of the Bankruptcy Code, approving the

---

[2]  For purposes of this paragraph, "Cause" means (i) an Eligible Employee's failure to materially perform the duties for which he or she is employed, (ii) an Eligible Employee's willful violation of a material Debtor policy, (iii) an Eligible Employee's commission of any act or acts of fraud, embezzlement, dishonesty, or other willful misconduct, (iv) an Eligible Employee's material breach of any of his or her obligations under any written agreement or covenant with the Debtor, or (v) an act of dishonesty on the part of the Eligible Employee resulting or intended to result, directly or indirectly, in his or her gain for personal enrichment at the expense of the Debtor.

6

proposed KEIP and authorizing the Debtor to make the payments contemplated thereunder, provided that the Sale is consummated.

## BASIS FOR THE RELIEF REQUESTED

**A.    Implementation of the KEIP is a Valid Exercise of the Debtor's Business Judgment Pursuant to Section 363(b) of the Bankruptcy Code**

20.    The Court may authorize the Debtor to implement the KEIP under section 363(b)(1) of the Bankruptcy Code.  Section 363(b)(1) provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  The use, sale, or lease of property of the estate, other than in the ordinary course of business, is authorized when a "sound business purpose" justifies such action. *See, e.g., Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (noting that under normal circumstances, courts defer to a trustee's judgment concerning use of property under section 363(b) when there is a legitimate business justification); *In re Delaware & Hudson R.R. Co.*, 124 B.R. 169, 176 (D. Del. 1991) (explaining that the Third Circuit has adopted the "sound business purpose" test to evaluate motions brought pursuant to section 363(b)).

21.    Historically, courts have approved employee compensation programs that are outside of the ordinary course of business pursuant to section 363(b) of the Bankruptcy Code. *See, e.g., In re Global Home Products, LLC*, 2007 Bankr. LEXIS 758, at *15 (Bankr. D. Del. March 6, 2007) ("The reasonable use of incentives and performance bonuses are considered the proper exercise of a debtor's business judgment."); *In re Nobex Corp.*, 2006 Bankr. LEXIS 417 (Bankr. D. Del. Jan 19, 2006) (approving incentive pay outside of ordinary course where it was "an appropriate exercise of the debtor's business judgment."); *In re Allen Family Foods, Inc.*, Case No. 11-1764 (KJC) (Bankr. D. Del. July 13, 2011) (approving executive and management incentive plan in connection with closing a sale).

22.    Moreover, the proposed KEIP is appropriate in the context of a sale case such as this, where the debtor has secured a potential purchaser prior to implementing an incentive program.  In *In re Diamond Glass, Inc.*, Case No. 08-10601 (CSS) (Bankr. D. Del. 2008), the Court rejected the notion that an incentive plan was inappropriate or unnecessary when a stalking horse bidder had come forward with a viable proposal to purchase substantially all of the debtors' assets.  In *Diamond Glass*, Judge Sontchi remarked that "even if the only thing management has to do [under the incentive plan] is hold [the] company together for the stalking horse bidder to close, I don't find that in and of itself primarily retentive. . . . Stalking horse cases, stalking horse bidders walk away. . . . I don't find that just getting to a . . . closing by a stalking hose bidder in and of itself is retentive." *Id.,* May 8, 2008 Hearing Tr. at 89.

23.    The Debtor submits that implementation of the KEIP is a proper exercise of its business judgment.  As noted above, in order to maximize creditor outcomes in this chapter 11 case, the Debtor is in the midst of an orderly process to sell its assets.  To successfully complete the Sale, the Debtor must, among other things:  (i) market its assets; (ii) generate interest on the part of other potential purchasers; (iii) respond to significant due diligence requests; (iv) receive qualified bids; (v) engage in an auction process; and (vi) close on the sale to a purchaser.  In the interim, the Debtor must maintain operations and going concern value that is critical to maximizing the value of this estate.

24.    The Debtor believes that the KEIP provides an appropriate mechanism by which to motivate the Eligible Employees to complete the requisite work necessary for maximizing the recovery to creditors, closing the Sale, and doing so by October 9, 2015. Pursuant to the terms of the KEIP and the DIP Credit Facility Documents (as such term is

8

defined in the Interim DIP Order), the Eligible Employees will be paid an incentive payment only in the event that a Sale closes.

      25.    The Debtor submits that implementation of the KEIP is an appropriate exercise of its business judgment under section 363(b)(1) of the Bankruptcy Code, and therefore should be approved by the Court.

**B.**    <u>The KEIP Complies With Section 503(c) of the Bankruptcy Code</u>

      26.    Section 503(c) of the Bankruptcy Code provides criteria for courts to use in approving certain types of payments to insiders and "other transfers or obligations that are outside of the ordinary course of business." 11 U.S.C. § 503(c). Section 503(c) contains: (1) a general prohibition of retention plans for insiders of a debtor; (2) limitations on severance payments to insiders of a debtor; and (3) standards governing other transfers or obligations that are outside the ordinary course of business and not justified by the facts and circumstances of the case, including transfers made to, or obligations incurred for the benefit of, officers, managers, or consultants hired after the date of the filing of the petition. *Id.*

      27.    There are two Eligible Employee under the KEIP who are insiders of the Debtor within the meaning of section 101(31) of the Bankruptcy Code: (1) Thomas A. Bologna (Chief Executive Officer) and (2) Kevin Harris (Chief Financial Officer). Nonetheless, for the reasons set forth below, neither section 503(c)(1) nor 503(c)(2) are applicable to the KEIP. Moreover, the KEIP complies with section 503(c)(3) of the Bankruptcy Code and should therefore be approved.

    **a.**  **Sections 503(c)(1) and (2) are Not Applicable to the KEIP**

      28.    Pursuant to the statute's plain language, section 503(c)(1) of the Bankruptcy Code pertains solely to retention plans, and section 503(c)(2) only addresses the

requirements for severance plans.  Neither section applies to performance-based incentive plans.

*See, e.g., Global Home Products*, 2007 Bankr. LEXIS 758, at *14 ("If [the proposed plans] are

plans to incentivize management, the analysis utilizes the more liberal business judgment review

under § 363."); *In re Nobex Corp.*, Case No. 05-20050, 01/12/06 Hearing Tr. at 67 (Bankr. D.

Del. 2006) (MFW); *In re Calpine Corp.*, Case No. 05-60200, 04/26/2006 Hearing Tr. at 87

(Bankr. S.D.N.Y. 2006(BRL)).  Indeed, Judge Lifland has held that:

> If sections 503(c)(1) and (c)(2) are not operative, a court may
> consider whether the payments are permissible under section
> 503(c)(3), which limits payments made to management and
> employees, among other things, outside of the ordinary course,
> unless such payments are shown to be justified under the facts and
> circumstances of the chapter 11 case.  As one treatise points out,
> the test appears to be no more stringent a test than the one courts
> must apply in approving any administrative expense under section
> 503(b)(1)(A).

*In re Dana Corporation*, 358 B.R. 567, 576 – 77 (Bankr. S.D.N.Y. 2006).

29.    The KEIP is neither a retention plan nor a severance plan.  Instead, the

KEIP is a performance-based plan that provides for targeted payments to certain employees

contingent upon the closing of the Sale.  The purpose of the KEIP is to motivate the Eligible

Employees to work hard in order to achieve the Sale and thereby receive the contemplated

incentive payments.  The KEIP does not have an impermissible retention or severance

component.  Therefore, sections 503(c)(1) and (2) are not applicable to the KEIP.**ii.**

**The KEIP Complies With Section 503(c)(3)**

30.    The KEIP and the payments contemplated thereunder comply with section

503(c)(3) of the Bankruptcy Code.  The statute states that:

> Notwithstanding subsection (b), there shall neither be allowed, nor
> paid—

(3) other transfers or obligations that are outside of the ordinary course of business and not justified by the facts and circumstances of the case, including transfers made to, or obligations incurred for the benefit of, officers, managers, or consultants hired after the date of the filing of the petition.

11 U.S.C. § 503(c)(3).  Since courts have begun to analyze various payments under section 503(c)(3), they have been unanimous in holding that they must use the "business judgment" standard as the proper standard for determining whether incentive programs and payments thereunder are justified.  *See e.g., Global Home Products*, 2007 Bankr. LEXIS 758, at *14; *In re Werner Holding Co., Inc.*, Case No. 06-10578 (KJC) (Bankr. D. Del. July 20, 2006, August 22, 2006, and December 20, 2006); *In re Riverstone Networks, Inc.*, Case No. 06-10110 (CSS) (Bankr. D. Del. March 28, 2006); *In re Pliant Corp.*, Case No. 06-10001 (MFW) (Bankr. D. Del. March 14, 2006).

31.    Indeed, Judge Walrath, in the *Nobex* case, stated that:

[Section] (c)(3) was meant to provide a standard, albeit not as clear, for any other transfers or obligations outside of the ordinary course of business … I read (c)(3) to be the catch-all and the standard under (c)(3) for any transfers or obligations made outside of the ordinary course of business are those that are justified by the facts and circumstances of the case… I find it quite frankly nothing more than a reiteration of the standard under 363… under which courts had previously authorized transfers outside of the ordinary course of business and that [are], based on the business judgment of the debtor…

January 12, 2006 Hearing Tr. at 86-87, *In re Nobex Corp.*, Case No. 05-20050 (MFW) (Bankr. D. Del.) (an order approving the management incentive plan was entered January 20, 2006).  In *Dana*, Judge Lifland agreed with Judge Walrath, stating that management incentive programs should be evaluated under the business judgment standard, which requires a debtor to satisfy the Court's inquiry into factors such as:

> Is there a reasonable relationship between the plan proposed and the results to be obtained, i.e. will the key employee stay for as long as it takes for the debtor to reorganize or market its assets, or in the case of a performance incentive, <u>is the plan calculated to achieve the desired performance</u> (emphasis added)?
>
> Is the cost of the plan reasonable in the context of the debtors' assets, liabilities and earning potential?
>
> Is the scope of the plan fair and reasonable; does it apply to employees; does it discriminate unfairly?
>
> Is the plan or proposal consistent with industry standards?
>
> What were the due diligence efforts of the debtor in investigating the need for a plan; analyzing which key employees need to be incentivized; what is available; what is generally applicable in a particular industry?
>
> Did the debtor receive independent counsel in performing due diligence and in creating and authorizing the incentive compensation?

*Dana Corp.*, 358 B.R. at 576–77 (citations omitted).  Moreover, Judge Lifland noted that courts generally take a "holistic" view of and measure of compensation packages.  *Id.* at 571.

32.    As noted above, the Debtor has a sound business purpose for establishing the KEIP, and the KEIP satisfies the factors articulated by Judge Lifland in *Dana*.  First, the KEIP is a performance-based plan that has been calibrated to motivate the Eligible Employees to "achieve the desired performance" specified under the KEIP (*i.e.*, consummation of the Sale).

33.    Second, the Debtor believes that the cost of the KEIP is reasonable in the context of the chapter 11 case, and in light of the amount of work that must be completed by the Eligible Employees to obtain their incentive payments.

34.    Third, the KEIP is "fair and reasonable" in its scope and does not "discriminate unfairly" because the Debtor designed the KEIP to only include those employees whose services, in its opinion, are truly necessary to achieving the Sale.

35.     Based upon the foregoing, the Debtor submits that it has established a "sound business purpose" for the formulation and implementation of the KEIP, and therefore has satisfied the requirements of section 363(b) and 503(c)(3) of the Bankruptcy Code. As set forth in detail above, the KEIP is a "true" incentive plan that has been designed to motivate the Eligible Employees to produce results. Accordingly, the Debtor submits that the KEIP should be approved and the Eligible Employees who satisfy the terms of the KEIP should be paid their respective incentive payments upon the closing of the Sale.

## NOTICE

36.     Notice of this Motion shall be given to the following parties or, in lieu thereof, to their counsel:  (i) the Office of the United States Trustee; (ii) the Debtor's prepetition and postpetition lenders; (iii) the top twenty largest unsecured creditors of the Debtor; and (iv) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given.

## NO PRIOR REQUEST

37.     No prior request for the relief sought in this Motion has been made to this or any other court.

13

WHEREFORE, the Debtor respectfully requests that the Court enter an order, substantially in the form annexed hereto, granting the Motion and such other and further relief as is just and proper.

Dated: August 14, 2015

PACHULSKI STANG ZIEHL & JONES LLP

/s/ James E. O'Neill
Jeffrey N. Pomerantz (CA Bar No. 143717)
Ira D. Kharasch (CA Bar No. 109084)
James E. O'Neill (DE Bar No. 4042)
John W. Lucas (CA Bar No. 271038)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE  19899-8705
Telephone: 302/652-4100
Facsimile: 302/652-4400
E-mail:      jpomerantz@pszjlaw.com
             ikharasch@pszjlaw.com
             joneill@pszjlaw.com
             jlucas@pszjlaw.com

Proposed Counsel for the Debtor and Debtor in Possession